No. 93-340

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

NANCY C. TOKUMOTO, d/b/a
Kadena's Gourmet Take-Away,

     Petitioner and Appellant,

v.

DEPARTMENT OF REVENUE OF THE STATE
OF MONTANA and GREENLEAF RESTAURANT
AND HOTELS CORPORATION, d/b/a
Greenleaf Cafe and Delicatessen,

     Respondents and Respondents.



FILED

FEB 24 1994

_El Smith_

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Robert J. Sullivan, Boone, Karlberg & Haddon,
Missoula, Montana

    For Respondents:

        David L. Nielson, Tax Counsel, Office of Legal
Affairs, Department of Revenue, Helena, Montana

        Milton Datsopoulos, Datsopoulos, MacDonald
& Lind, Missoula, Montana  (Greenleaf)

Submitted on Briefs:  February 3, 1994

Decided:  February 24, 1994

Filed:

_____
Clerk

Justice William E. Hunt delivered the opinion of the Court.

Petitioner/Appellant, Nancy C. Tokumoto, d/b/a Kadena's Gourmet Take-Away (Tokumoto), appeals from an order of the Fourth Judicial District Court, Missoula County, affirming the decision of the Department of Revenue which awarded a beer/wine license in the City of Missoula to respondent, Greenleaf Restaurant (Greenleaf).

We affirm.

The dispositive issue is whether the District Court erred when it affirmed the Department of Revenue's findings that Greenleaf was qualified to receive an on-premises consumption beer/wine license.

In early 1991, the City of Missoula annexed adjoining property increasing the city's population. The Department of Revenue (DOR) found that this increase justified issuance of four new beer/wine licenses to Missoula businesses, pursuant to §§ 16-4-203 and -502, MCA. Twenty-one Missoula businesses applied for the licenses. DOR held a hearing on October 22, 1991, for purposes of considering the applications, pursuant to § 16-4-207(3), MCA. Seventeen applicants appeared, including Greenleaf's sole proprietor and stockholder, Mr. Merhi, who testified that he was not a United States citizen. Many other applicants objected to his application based on this admission because, they argued, residency and state voter registration requirements were conditions precedent to DOR's consideration of a licensee application.

On December 24, 1991, the hearing officer sent notice of a proposed decision to all interested parties which stated that Greenleaf was to be one of the successful applicants. The hearing

2

examiner found that the citizenship requirement under § 16-4-401(2)(a)(iii), MCA, could be satisfied at any time prior to DOR's order for the issuance of the new licenses, and that Mr. Merhi's citizenship was not a condition precedent for consideration of qualification or fitness for a license. In addition, the hearing examiner found that Tokumoto would be an alternate recipient in the event any one of the four successful applicants did not receive a license.

In January 1992, Tokumoto submitted written objections to the hearing examiner's proposed decision. On July 24, 1992, DOR adopted the proposed findings of the hearing examiner that awarded Greenleaf a license.

Tokumoto sought judicial review, pursuant to § 16-4-411, MCA, in the Fourth Judicial District, Missoula County. She contested DOR's acceptance of Greenleaf's application on the basis that at the time of Greenleaf's application, § 16-4-405(3)(c), MCA, required Mr. Merhi to be a state registered voter, which first required him to be a United States citizen. DOR contended that § 16-4-401(2), MCA, requires the applicant to be a registered voter only by the time DOR orders the issuance of a license, and that Mr. Merhi could meet that requirement. Further, DOR expressed that it routinely grants liquor licenses for facilities not yet built, allowing businesses to bring premises up to a standard of suitability prior to issuing a license. In a similar manner, DOR argued that eligibility requirements for beer/wine licensee applicants could be cured prior to issuance of the license.

3

The District Court, giving deference to DOR's interpretation of its own regulations, found that DOR correctly interpreted §§ 16-4-401 and -405, MCA, when it issued its approval of the license to Greenleaf. On April 19, 1993, Tokumoto filed a motion requesting the District Court to reconsider its order of April 9, 1993, which the court denied. On June 8, 1993, Tokumoto filed this appeal.

Did the District Court err when it affirmed the Department of Revenue's findings that Greenleaf was qualified to receive an on-premises consumption beer/wine license?

The administration of liquor licenses is governed by the Montana Alcoholic Beverage Code, which includes licensing criteria set forth in §§ 16-4-401 through -405, MCA. Section 16-4-401(2)(a)(iii), MCA, provides:

> In the case of a license that permits on-premises consumption, the department must find in every case <u>in which it makes an order for the issuance of a new license</u> or for the approval of the transfer of a license that:
> . . . .
>      (iii)  the applicant is a resident of the state and is qualified to vote in a state election . . . . [Emphasis added].

Section 16-4-401(2)(b)(i), MCA, requires:

>      (b)   in the case of a corporate applicant:
>      (i)   the owners of at least 51% of the outstanding stock meet the requirements of subsection (2)(a)(iii)
> . . . .

Section 16-4-405(3)(c), MCA, provides:

>      (3)   A license under this code may not be issued if the department finds <u>from the evidence at the hearing</u> held pursuant to 16-4-207(3) that:
>      . . . .

4

(c) the applicant or the premises proposed for licensing fail to meet the eligibility or suitability criteria established by this code . . . . [Emphasis added].

We have held that the standard for reviewing an administrative agency's conclusions of law is whether the agency's interpretation of law is correct. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603.

Tokumoto claims that DOR's award of the beer/wine license to Greenleaf resulted in substantial prejudice to her. She emphasizes that the parties do not dispute that at the time of application, at the hearing, and at the issuance of the preliminary findings and proposed order, Greenleaf's owner, Mr. Merhi, was not a United States citizen.

Tokumoto argues that § 16-4-401(2)(a)(iii), MCA, clearly sets forth the criteria that must be met in every case in which DOR makes an order, but that the statute is silent as to when the evidence of qualifications must be presented. Tokumoto asserts that DOR's interpretation of the statute, that an applicant could qualify any time before DOR makes a final order for the issuance of a new license, is incorrect because it requires insertion of language not in the statute. Tokumoto contends that, on the contrary, the plain language of § 16-4-405(3)(c), MCA, clearly and unambiguously dictates that an applicant be eligible as determined by evidence produced at the hearing.

The hearing examiner found:

It has been long-standing, past practice of the Department to permit applicants to cure defects in an

5

application prior to actual _issuance_ of a license, the specific and unequivocal term used in the statute. Therefore, citizenship is not used as a criteria in looking to the applicants before this hearing.

DOR asserted that Tokumoto's interpretation of the statutes employed too narrow a reading. It reasoned:

Just as the Department allows the premises to be brought to a standard of suitability after submission of the [liquor license] application, so should an [beer/wine licensee] applicant be permitted to complete attainable eligibility criteria after submission of the application.

The District Court gave deference to DOR's interpretation of its own regulations. The court found that from the plain language of §§ 16-4-401 and -405, MCA, "DOR cannot _issue_ a license if the evidence at the hearing reveals that the applicant failed to meet the eligibility criteria . . . . [and] DOR cannot _issue_ a license if the applicant is not a resident of the state . . . ." The court was persuaded by DOR's long-standing past practice to permit applicants to cure defects in an application prior to actual issuance of a license.

We have held that "[t]his court shows great deference to an interpretation given a statute by the agency charged with its administration." Norfolk Holdings, Inc. v. Montana Dept. of Revenue (1991), 249 Mont. 40, 44, 813 P.2d 460, 462 (citations omitted). We agree with DOR and the District Court.

Although Mr. Merhi was not a citizen at the time of the hearing, the record shows that he was taking affirmative steps to obtain United States citizenship to become eligible by the time of issuance of the license. DOR historically has granted liquor

6

licenses for premises that are not even constructed on the condition that the premises would be constructed according to the plans presented it and further contingent upon the premises meeting applicable building codes, sanitary inspections, and health codes. Not to do so would mean that an applicant who did not have the premises fully ready for use could never be granted a license, even if he acted in reliance of the possibility of receiving a license. In the past, DOR has allowed beer/wine license applicants to cure eligibility requirement defects for the same reason. Mr. Merhi's gamble, that he may not have become a United States citizen by the time DOR ordered issuance of the four licenses, did not substantially prejudice Tokumoto, but affected him alone. If he had failed to obtain citizenship in time, Tokumoto apparently would have been the beer/wine license recipient.

We affirm the District Court.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

7

_____

_____
Justices

Justice Karla M. Gray, dissenting.

I respectfully dissent from the opinion of the Court.

It is not disputed that the hearing held in this matter was required by § 16-4-207(3), MCA, because written protests had been filed. It also is not disputed that, at the time of the hearing, Greenleaf's owner did not meet the eligibility criteria contained in § 16-4-401(2)(a)(iii), MCA.

These undisputed facts lead inexorably to § 16-4-405, MCA. That statute prohibits the issuance of a retail alcoholic beverage license if the Department finds <u>from the evidence at the hearing</u> that the applicant fails to meet the eligibility or suitability criteria provided by statute. There is no mystery here; the statutory language is plain, clear and unambiguous. If evidence produced at the hearing establishes that an applicant does not meet the eligibility criteria, the Department must so find. Having so found, the license cannot be issued to the applicant.

The hearing examiner, the District Court and this Court rely on the Department's past practices in giving "deference" to the Department's interpretation of the statutes at issue here. Such reliance is totally unwarranted where, as here, the past practices are clearly at odds with the plain statutory language.

Our standard of review is whether the agency and the District Court correctly interpreted the law. It is clear that they did not. Agencies are not free to act in a manner which contravenes laws enacted by the legislature; nor are they entitled to deference

9

in their interpretation of the law when that interpretation is based on actions and practices which do not comply with the law.

The fact is that the statute at issue here does not say what the District Court said it says. Section 16-4-405, MCA, does not say that the Department cannot issue a license if the applicant fails to meet the statutory eligibility criteria by the time the license is issued. Section 16-4-405, MCA, states clearly that a license cannot be issued if the Department finds, from the evidence at the hearing, that the applicant does not meet the criteria. The Court's opinion ignores the clear statutory language. In so doing, the Court violates its most fundamental obligation with regard to statutory interpretation: to declare what a statute says, without omitting what is contained therein. Section 1-2-101, MCA.

Moreover, the portions of the Court's decision relating to the Department's practices with regard to premises suitability and prejudice to Tokumoto are entirely irrelevant. The fact that the Department has acted contrary to the statute with regard to both premises suitability and applicant eligibility hardly bolsters the legal propriety of its actions. Nor does any statute at issue here require Tokumoto to show prejudice.

I would reverse the District Court.

_____
Justice

10